# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

In re HOWELL.

(Circuit Court of Appeals, Second Circuit. July 17, 1914.)

No. 228.

1. BANKRUPTCY (§ 76*)—INVOLUNTARY PETITION—PERSONS ENTITLED TO FILE OR JOIN IN PETITION.

Under Bankruptcy Act, July 1, 1898, c. 541, § 59b, 30 Stat. 561 (U. S. Comp. St. 1901, p. 3445), providing that three or more creditors having provable claims against any person, amounting in the aggregate, in excess of the value of securities held by them, if any, to $500 or more, may file a petition to have him adjudged a bankrupt, each creditor joining in the petition must be the owner of a demand, or claim provable against the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 50, 56, 97, 99, 100; Dec. Dig. § 76.*]

2. CORPORATIONS (§ 579*) — REORGANIZATION — LIABILITIES OF INDORSER OF CORPORATION'S NOTES.

In a stockholders' suit a receiver was appointed to report a plan of reorganization. The creditors entered into a reorganization agreement, and a committee of the creditors intervened in the stockholders' suit, asking a sale of the corporate assets. The reorganization plan contemplated the purchase by the committee of the assets and turning them over to a new company in exchange for its capital stock, to consist of $1,575,000 preferred stock and $3,150,000 common stock. The old stockholders were not to participate in the new company except as they might subscribe for stock on terms less favorable than those made to outsiders, but the creditors were to receive 25 per cent. of their claims in preferred stock and 75 per cent. in common stock, or 25 per cent. in cash for the new stock to which they were entitled. The offer of the committee to pay $870,000 was accepted by the court. Of this sum a dividend of 21.2 per cent. was available for distribution to creditors, and the creditors had the option of accepting such dividend or of receiving new stock, or 25 per cent. of their claims under the reorganization agreement. *Held*, that the sale amounted to a levy of execution on behalf of the creditors, fixed the value of the property transferred, and resulted in the payment of claims to the extent of the dividends realized, and no more, notwithstanding the price in stock at which the property was transferred by the committee to the new company; and a holder of the corporation's notes, after applying the amount of the dividend thereon, could hold an indorser for the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
215 F.—1

balance, where the reorganization agreement provided that the creditors did not waive any rights against any indorser or person secondarily liable.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2307, 2309, 2313–2318; Dec. Dig. § 579.*]

Appeal from the District Court of the United States for the District of Connecticut.

This cause comes here on appeal from a final order and decree made in the District Court of the United States for the District of Connecticut on August 5, 1913 (207 Fed. 973), adjudging that George D. Howell is not a bankrupt, and that the petition for involuntary bankruptcy against him be dismissed. Reversed and remanded.

White & Case, of New York City (Walter C. Noyes, Joseph M. Hartfield, and Irving S. Olds, all of New York City, of counsel), for appellants.

William F. Henney, of Hartford, Conn. (William E. Curtis, Henry A. Stickney, and Cornelius C. Webster, all of New York City, of counsel), for respondent.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. [1] This was a petition in involuntary bankruptcy. The Bankruptcy Act in section 59b provides as follows:

"Three or more creditors who have provable claims against any person which amounts in the aggregate, in excess of the value of securities held by them, if any, to five hundred dollars or over; or if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt."

Under this provision it has been held to be absolutely necessary that each creditor joining in the petition should be the owner of a demand or claim "provable" against the bankrupt within the provisions of the act. In re Crafts-Riordon Shoe Co. (D. C.) 185 Fed. 931.

The petition in involuntary bankruptcy was filed against George D. Howell by the Mechanics & Metals National Bank, a corporation having its place of business in New York City, and the Corn Exchange National Bank, having its place of business in the city of Philadelphia, Pa., and the Franklin National Bank, likewise having its place of business in Philadelphia, all of which corporations are organized under the provisions of the National Bank Act. The petitioners are creditors of Howell, a resident of Hartford, Conn. Each of the petitioners claims to be the bona fide holder of a separate promissory note for $5,000 taken before maturity and for value and executed by the McCrum-Howell Company and indorsed by Howell before delivery, the aggregate of their claims amounting to $15,000.

The act of bankruptcy charged against Howell was that while insolvent he made, together with one Lloyd G. McCrum, a general assignment for the benefit of his creditors and for the benefit of the creditors of the said McCrum, to Oscar L. Telling, of Pittsburg, Pa.,

as trustee. A demurrer was interposed on the ground that the assignment to Telling was not a general assignment for the benefit of creditors, and did not purport to be such by its terms and expressions, and that the property conveyed was not alleged to be all or a large portion of all of the property of Howell, and that it was not alleged to be for the benefit of all the creditors of Howell. The demurrer was overruled, and an answer was filed. The answer denies that the respondent had made a general assignment. It alleges that the transfers and conveyances complained of transferred and conveyed only a part of his property, and that he continues possessed of a considerable and substantial amount of his property. It also avers that he was not insolvent at the date of the conveyances, nor at any time subsequent. It contains a schedule of the property conveyed and its value as well as of the property not conveyed, and its value. It avers that the petitioners and other creditors of the McCrum-Howell Company had availed themselves of a plan and agreement for reorganization of that company and thereby had received payment in full of their debts as upon a settlement made by them through their agents, the creditors' committee, direct with the principal debtor, and that those creditors holding notes of the McCrum-Howell Company indorsed by him have no claim upon him for any part of such notes, as by such settlement and payment the petitioners have released and discharged him from his contingent liability as an indorser.

The court below did not undertake to determine whether the assignment was or was not a general one, and therefore an act of bankruptcy. Its attention was confined to a consideration of the question whether the liability of the respondent as an indorser of the notes held by the petitioning creditors any longer existed. As the court came to the conclusion that it did not, the petition was dismissed on that ground. It was not alleged or claimed that the petitioning creditors had in any way recognized or assented to the assignment, or had in any way participated in it so as to be estopped by the election between their rights under the assignment and those under the bankruptcy law.

[2] The sole question which is presented to this court on this appeal is whether the respondent was released as an indorser of the notes of the McCrum-Howell Company by the action of the creditors under the reorganization agreement. And in order to answer that question it becomes necessary to examine the facts somewhat in detail.

The McCrum-Howell Company was a Connecticut corporation, which had its main office and headquarters in New York City. It carried on an extensive business throughout the United States. In 1910 it had a capital stock of $7,000,000, one-half preferred and one-half common. Its factories were in Connecticut, Pennsylvania, and Wisconsin. But the largest amount of its property and assets were in Pennsylvania. On March 13, 1912, a stockholders' bill was filed in the United States District Court at Philadelphia asking for the appointment of a receiver of the company. The bill stated that in the then condition of trade it was impossible to convert the assets into money to meet outstanding commercial paper about to mature. The bill also alleged

that the company was solvent, but that the appointment of the receiver-ship was necessary to preserve the assets; and it farther asserted that it would be necessary "to formulate and adopt a plan of reorganization or continuation under some general agreement." The District Court made an order appointing receivers and authorized them, among other things, "to report to the court such plan of reorganization or resumption of business by the corporation as may be satisfactory to the said creditors and stockholders."

The creditors entered into a creditors' agreement on April 10, 1912, which was intended to promote the reorganization of the company. It provided that the holders of claims might deposit their claims with the Bankers' Trust Company in New York City, designated as the depositary. The depositary was to issue to the depositors certificates which were to be treated as negotiable instruments. A creditors' committee was to formulate a plan and agreement for the reorganization of the company and the readjustment of its obligations. And if after the committee had agreed upon a plan of reorganization any holder of a certificate of deposit disapproved it, he was to be at liberty to surrender his certificate and withdraw his deposit claim. And all holders of certificates who did not withdraw before a given date were to be bound by the agreement.

Thereafter and on September 11, 1912, the creditors' committee intervened in the suit in the United States District Court at Philadelphia "for the purpose of facilitating the reorganization," filing a cross-bill, in which they asked for a sale of the assets of the company. It was set forth that the allegations contained in the original bill that the corporation was solvent, and that its quick assets were worth more than its indebtedness, were untrue, that the receivers could not successfully carry on the business, and that a prompt sale of the assets was the only way in which the creditors could realize anything upon their claims. The prayer of the cross-bill was for an adjudication that the corporation was insolvent, that a sale of the assets was necessary, and that the receivers should be directed to make such sale upon terms and conditions to be prescribed by the court. The corporation, the receivers, and the complainant in the stockholders' suit all filed answers to the cross-bill, admitting its material averments.

The value of the assets was variously estimated. The estimate of the expert accountants was $2,900,989.65. The receivers scaled this down to $2,662,967.88, and the creditors' committee reduced it to $2,-400,000. But these figures were exclusive of patents, patent rights, trade-marks, and good will; in acquiring which the company was understood to have expended large sums of money. Subsequently the receivers reduced still further, their estimate of the assets and fixed the amount at $2,179,361.02, still excluding patents, patent rights, trade-marks, and good will. The liabilities of the company amounted to over $2,600,000 upon $2,229,935.30 of which the respondent Howell was liable as an indorser.

A plan and agreement for the reorganization of the company, was made which contemplated the purchase by the creditors' committee, "at judicial sale or otherwise," of the assets of the corporation and the

turning over of the assets to a new company in exchange for its capital stock consisting of $1,575,000 preferred stock and $3,150,000 common stock. The committee was to distribute the stock so received in part to the creditors of the corporation and to sell a portion to obtain cash for the expenses of the receivership and reorganization, and to provide working capital necessary for the new company. Under this agreement the stockholders of the old corporation were to have no participation in the new company except that they might subscribe for the stock which it was necessary to sell, but the terms on which they might subscribe were less favorable than those made to outsiders. There was to be reserved $700,000 of preferred stock and $2,275,000 of common stock for the purpose of distribution to the creditors of the McCrum-Howell Company, the distribution to be made on the following basis: 25 per cent. of the face of their claims in preferred stock, and 75 per cent. in common stock. Creditors who might be unwilling to accept securities of the new company could receive 25 per cent. of the face of their claims in cash for the transfer of the new securities to which they were entitled. Subsequently application was made to the District Court for an order for the sale of the assets, and after due notice and at the hearing upon the application the creditors' committee presented to the court an offer, to purchase the property for the sum of $870,000. The court entered a decree nisi, directing a sale of the assets as a whole and the acceptance of the offer made by the creditors' committee unless at a time fixed for a further hearing after giving proper notice to all, and some ten days later, there should be presented a higher bid, or some better plan, or unless other good cause should be shown why the decree should not be confirmed. At the time fixed for such further hearing, November 13, 1912, the court made a final decree directing the receivers to transfer and convey all the assets to the creditors' committee for the sum of $870,000 "upon the conditions set forth in said written bid, heretofore ordered filed in this case," and it went on to recite that the bid "was and is the best bid obtainable for said property, assets, claims, and effects, and that it was and is for the best interest of said creditors, stockholders, and other persons interested in said the McCrum-Howell Company that said bid be accepted." The decree also provided that meetings of the stockholders and directors of the company should be called for the purpose of acting upon the proposed sale and of authorizing the execution of such conveyances as might be necessary to vest in the purchaser the legal title to the property and assets of the company. A stockholders' meeting was held after due notice to all stockholders, and by a unanimous vote the execution of the conveyances was directed. A directors' meeting was in like manner held after due notice, and by a unanimous vote the execution of the conveyances was also authorized. The creditors' committee having designated the Richmond Radiator Company as its nominee, the conveyances were executed directly to it by the receivers and the old company. The Richmond Radiator Company was a new company organized under the laws of Delaware, and brought into existence for this purpose.

On the final accounting of the receivers it was found and adjudged that there was available for distribution to creditors $562,964.07, which made a dividend of 21.2 per cent. on proved claims.

On the facts stated and under the creditors' agreement it seems to be agreed that there were three courses open to a creditor of the Mc-Crum-Howell Company: (1) He could file his claim in court and receive the first and final dividend of 21.2 per cent.; (2) he could deposit his claim with the creditors' committee and authorize the committee to use his dividend in acquiring securities of the new company, and then dispose through the committee of such securities for 25 per cent. of his claim in cash; or (3) in lieu of the dividend to which he was entitled, he could decree the committee to purchase securities of the new company, receiving 25 per cent. of the face value of his claim in preferred stock and 75 per cent. of the face value in common stock.

The court below was of the opinion that the sale of the property in the United States District Court for the Eastern District of Pennsylvania was a mere step in the plan of reorganization, and that it did not fix the value of the property transferred. In this view we are unable to concur. That sale was a sale upon a creditors' bill, and amounted to a levy of execution on behalf of the creditors. It resulted in a payment of the claims to the extent of the dividends realized and no more. The proceedings for the sale of the property were regularly taken after due notice to all concerned. The testimony shows that the receivers in advising the court to accept the bid had no intention that acceptance should be qualified upon the plan of reorganization becoming effective. On the contrary, the creditors who had not deposited their claims with the creditors' committee were not lost sight of, and the receivers had in mind that it was their duty to obtain for the creditors who never became parties to the creditors' agreement the highest possible dividend. The reorganization was something with which the court had nothing whatever to do. It was the voluntary agreement of the parties in interest.

The decrees provide for a sale and make no reference to any plan of reorganization. The fact that a reorganization was to follow cannot alter their nature or effect. They were not mere consent decrees, and at the time of the hearing of the motion to sell the properties but 85 per cent. of the claims were represented by the creditors' committee. It is impossible to regard the final decree of sale as a mere incident in the plan of reorganization, and it must be regarded as finally determining the value of the property of the McCrum-Howell Company. The purchase price, after payment of expenses, was sufficient to permit a dividend of 21.2 per cent. to creditors, including the creditors who held the notes indorsed by the respondent. The petitioners as the holders of such notes should apply this dividend payable out of the estate of the McCrum-Howell Company, the principal debtor, to the payment of the notes, and then look to the respondent as the surety on those notes for the difference.

In this connection it is proper to observe that the creditors who entered into the creditors' agreement expressly reserved their claim

against the respondent. The agreement contained the following provision:

"Eleventh: The depositors do not assign to the committee any claim against any party other than the company, and do *not waive or release any rights or claims against any indorser or guarantor of or person otherwise secondarily liable upon any of the claims deposited hereunder.*"

The respondent, however, asserts that the creditors have received full payment of their claims because after the sale of the property of the McCrum-Howell Company, the new company organized by the creditors to take over the property placed a value of $4,725,000 upon the assets which they received. He relies upon the decision of the Supreme Court in Northern Pacific Railway Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931 (1913). In that case the court held that where the stockholders of a corporation transferred its property to a new corporation, in which they were likewise the stockholders, the claims of creditors were not cut off even though the transfer took the form of a reorganization and judicial sale. And the court held that the fact that property of great value belonging to an insolvent corporation was bid in by the reorganization committee at the upset price fixed by the court at a judicial sale could not be used as evidence to disprove the recital as to its actual and far greater value when subsequently transferred by the reorganization committee. The rule laid down must be interpreted in the light of the facts then before the court. We do not understand that the court was laying down a rule to be applied to such a case as that now before us. The facts in that case were so different from the facts in this case that the two cases are to be distinguished. In the Boyd Case the reorganization was a stockholders' and not a creditors' reorganization, and the particular decision in that case was directed against the evil of permitting stockholders to reorganize and retain their property to the injury of creditors. In the case at bar the stockholders of the old corporation did not become stockholders in the new company except as they were permitted to subscribe on terms less favorable than those accorded to outsiders. In so far as the respondent might have been interested as stockholder and indorser he had a full and fair opportunity to protect his interests, and did nothing. In the Boyd Case the stockholders who purchased the property at the foreclosure sale were the purchasers of a trust fund, charged primarily with the payment of the creditors. They were in the position of a mortgagor buying at his own sale, and it is settled law that any arrangement the stockholders enter into by which their subordinate rights and interests are attempted to be secured at the expense of the prior and superior rights of the creditors cannot avail as against the latter. See Louisville Trust Co. v. Louisville Ry., 174 U. S. 674, 19 Sup. Ct. 827, 43 L. Ed. 1130 (1899).

The order is reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.