## Olean Sand & Gravel Corporation, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 41261, 48190.   Promulgated October 15, 1931.

*John E. Hughes, Esq.,* and *William Cogger, Esq.,* for the petitioner.

*C. R. Marshall, Esq.,* for the respondent.

OPINION.

SMITH: At the hearing counsel for the petitioner called attention to the fact that the petitioner corporation had been dissolved and that the petition in Docket No. 48190 was verified by the "Trustee for the stockholders of the Olean Sand & Gravel Company dissolved under date of February 8th, 1929, and as such Trustee is duly authorized to verify the * * * petition." Such facts do not deprive this Board of jurisdiction; the petition in Docket No. 41261 was filed prior to dissolution and the petition in Docket No. 48190 a few days

thereafter; the corporate existence of the petitioner continued after the date of dissolution for certain purposes, within the scope of which is the prosecution of these proceedings for the determination of its tax liability. See McKinney's Consolidated Laws of New York, vol. 22, secs. 35 and 221 of General Corporation Law; and *August Belmont Hotel Co.*, 18 B. T. A. 643.

Section 204 (c) of the Revenue Acts of 1924 and 1926 provides that "the basis upon which depletion" and depreciation "are to be allowed in respect of any property shall be the same as is provided in subdivision (a) * * * for the purpose of determining the gain or loss upon the sale or other disposition of such property." In so far as material hereto, section 204 (a) provides that:

.(8) If the property * * * was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 *  *  * then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

The several creditors of the bankrupt acquired the property of the bankrupt at the receiver's sale for $20,000 cash and subsequently conveyed it to the petitioner in exchange for its stock. The cost of the property so acquired was not increased by any gain or decreased by any loss since, for all that the record discloses, these creditors, who were the transferors, were in control of the petitioner corporation immediately after the exchange. Furthermore, the stock received by each is substantially in proportion to his interest in the property prior to the transfer. (See section 203 (b) (4) of the Revenue Acts of 1924 and 1926.)

Much of the record and the briefs in this case is given over to a discussion of the valuation of the property so acquired, whereas under section 204 (a) (8) we are concerned with the cost of the property. The petitioner, in effect, contends that the transferors acquired the property at the receiver's sale at a cost of $20,000 cash, plus the amount of their claims against the bankrupt, less dividends, or a total cost of $163,350.86. The respondent contends that the cost of this property was only $20,000; that the purchase was made without the assumption of any liabilities for the payment of the claims of these creditors; and that the dividends of $12,203.09 added to the $20,000 in the computations for the fiscal years ended in 1927 and 1928 should be eliminated.

There is no evidence to show that the assets of the bankrupt were sold subject to any liens or that the purchaser, and subsequently the petitioner, assumed any liability for claims of creditors. There is positive testimony that the petitioner did not assume any such liability.

In *Petree* v. *United States*, 34 Fed. (2d) 563; affd., 41 Fed. (2d) 517, certain stockholders of a bankrupt corporation who had advanced funds to a new corporation for the purchase of the bankrupt's assets at the receiver's sale received the entire stock of the new corporation. In computing the gain upon the subsequent sale of the stock in the new corporation the taxpayers contended that its cost was the amount of the cash advanced to acquire the assets of the bankrupt plus their investment in the bankrupt corporation. The court held that their investment in the bankrupt corporation was a loss deductible in the year of the liquidation of the bankrupt corporation and that the cost basis of the stock in the new corporation was the amount of the advance to the new company for the purpose of acquiring the assets of the bankrupt.

In *Grain King Manufacturing Co.*, 14 B. T. A. 793, certain individuals had purchased property subject to a mortgage at a receiver's sale and later transferred the property to the taxpayer in exchange for its capital stock. We there approved the respondent's determination that the basis for depreciation was the cost (cash price plus mortgage assumed less amount of nondepreciable property) to the transferors. See also *Mechanics Bank of Brooklyn*, 9 B. T. A. 1; and *Rudolph Bergfeld*, 19 B. T. A. 312.

Similar transactions have been considered in the determination of invested capital of taxpayers under the provisions of the Revenue Acts of 1916 and 1918, but such cases are distinguishable in that the basis was the cash value of such property when acquired and not the cost in the hands of the transferor. See *Pittsburgh Grinding Wheel Co.*, 2 B. T. A. 712; *Nazareth Cement Co.*, 4 B. T. A. 1121; *Giant Tire & Rubber Co.*, 7 B. T. A. 1249; *Federal Grain Corporation*, 18 B. T. A. 242.

Cook on Corporations, 8th ed., vol. 3, p. 2394, sec. 642, contains the following:

> \* \* \* An insolvency sale in equity at the instance of corporate creditors is in effect the same as a sale on execution, and even though the purchaser is a reorganization committee, representing a portion of the creditors, such purchaser is the same as any other purchaser would be.

*In re Howell*, 215 Fed. 1, cited in a note to the above statement, is a case wherein a creditor's committee purchased the assets of a bankrupt estate for an amount considerably less than their estimated value. The court held that the sale amounted to a levy of execution on behalf of the creditors, fixed the value of the property transferred (to the new corporation organized by the creditors), and resulted in the payment of claims to the extent of the dividends realized, and no more, notwithstanding the price in stock at which the property was transferred by the committee to the new company.

In the instant case the proceedings in bankruptcy liquidated the claims of the creditors of the Machias Company, and since such claims were not liens upon the property, but were satisfied out of the proceeds from the sale of the property of the bankrupt, they did not pass with the property and become liabilities of the purchaser and subsequently of the petitioner. In the circumstances, we are of the opinion that the cost to the transferor of the property upon which the petitioner claims deductions for depreciation and depletion is the amount of cash paid for that property at the receiver's sale. Cf. *Grain King Manufacturing Co.*, supra; *Mechanics Bank of Brooklyn*, supra; *D. O. James Manufacturing Co.*, 17 B. T. A. 205; *Burlington Gazette Co.*, 21 B. T. A. 156.

The petitioner cites *Bay City Fuel Co.*, 20 B. T. A. 450, as being " on practically all fours with the instant case." That case is clearly distinguishable and our decision there is not controlling here. In that case the transferor acquired two barges from his employer in consideration of (1) certain agreements and promises to operate a bunker coal business at Mobile, Ala., and New Orleans, La., and to handle the coal of his former employer as long as it produced bunker coal; (2) his past services; and (3) the execution of notes for $20,000. In the circumstances of that case we were justified in finding a basis greater than $20,000 upon which to compute the allowance for depreciation. In the instant case the property of the bankrupt was acquired for $20,000 cash, and there were no such other considerations as were involved in the *Bay City Fuel Co.* case. The claims of the creditors (including the transferors) against the bankrupt were liquidated by the bankruptcy proceedings and can not be considered as part of the consideration.

The burden of proof is upon the petitioner to show all facts necessary to a correct determination of the proper allowances for depreciation and depletion. The facts of record indicate that the useful life of the property in question was less than originally estimated by petitioner and determined by the respondent for the years ended in 1925 and 1926, but are in accordance with the respondent's determination for the years ended in 1927 and 1928. The sand deposit was exhausted in 1928 and the machinery and equipment were sold in 1929. The useful life of the property was limited by the duration of operations to five years.

In *Rayville Coal Co.*, 20 B. T. A. 525, 526, we said:

\* \* \* Our decision [in *Stouts Mountain Coal Co.*, 4 B. T. A. 1292] \* \* \* established the rule that taxpayers may recover the whole cost of mineral reserves and depreciable assets used for production therefrom, even if it becomes necessary to readjust depletion and depreciation rates on account of conditions not known when operation was begun. This rule is fully supported by the Supreme Court in *United States* v. *Ludey*, 274 U. S. 295. See also *Thompson Oil & Gas Co.* v. *Commissioner*, 40 Fed. (2d) 492.

In *United States* v. *Ludey*, 274 U. S. 295, the Supreme Court said:

\* \* \* The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost. \* \* \*

We have no adequate information upon which to allocate the cost basis between property subject to depreciation and property subject to depletion. This property was bought as a whole, and for the fiscal years ended in 1927 and 1928 the petitioner claimed and the respondent allowed a composite deduction. In determining the allowances for these years (ended in 1927 and 1928) the respondent applied a rate of 20 per centum. The petitioner makes no contention that this rate should be increased on account of the discovery of the clay bank in 1925, which reduced the period of operations and affected the rate used in prior years. In the circumstances we approve the allowance of a composite deduction for depreciation and depletion, and hold that the cost, less the salvage value, of the property should be exhausted ratably over the five-year period of production.

No sufficient evidence has been offered to show that the petitioner is entitled to any greater allowances for depreciation upon additions to its plant and equipment than those determined by the respondent; in the circumstances such allowances are sustained.

The amount of dividends ($12,302.19) added to the cost basis of $20,000 " in the spirit of compromise " should be eliminated, since there is no ground upon which such dividends paid to the creditors acquiring the property in question can be considered as part of the cost of the property. The respondent confesses error in this respect; and his motion for increased deficiencies resulting from computations based upon the correct cost basis, as determined above, is sustained.

*Judgment will be entered under Rule 50.*