COOSA LAND COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49470, 51250, 63121. Promulgated November 23, 1933.

*W. S. Pritchard, Esq.,* for the petitioner.

*Hartford Allen, Esq.,* and *De Witt M. Evans, Esq.,* for the respondent.

OPINION.

Lansdon: The respondent determined income tax deficiencies against the petitioner, as shown below, which are disputed in these

consolidated appeals. In amended answers the respondent now asks that two of these deficiencies be increased. The cases by docket number, with years to which they relate, and amounts in dispute, are as follows:

| Docket No. | Tax year | Original deficiency | Amount claimed in amended answer |
|---|---|---|---|
| 49470 | 1926 | $9,655.84 | $12,914.21 |
| 51250 | 1927 | 23,151.95 | 27,979.95 |
| 63121 | 1929 | 743.86 | |

Prior to March 1, 1913, the petitioner acquired stock in a Canadian holding corporation, which was subsequently taken over by the Southeastern Power & Light Co. In that process the petitioner received the latter company's stock in exchange for his original stock, and sold it during 1926 and 1927. The cost to petitioner of the shares sold is an issue common to those years. Other issues involve petitioner's claims for (1) a credit on 1926 tax for an overassessment made in 1925, (2) for the right to deduct from 1927 gross income $104,886.31 representing loss on investments in the Atlas Fertilizer Co., (3) the right to have eliminated from 1929 income the sum of $1,314.36, which the respondent has held was realized profit to it from the sale of lots at Gadsden, Alabama, and (4) the right to deduct sundry expenses and salary items amounting to $7,289 from its 1929 income.

An additional deduction claimed for 1927, amounting to $37,-734.83, has been conceded by the respondent in his brief filed since the hearing and accordingly is allowed.

Respecting the issues involved in the sales of the Southeastern Power & Light Co. stock, the parties have stipulated that the petitioner in 1926 sold 3,235 of such shares for the sum of $94,810.98, and in 1927, 6,465 shares for the sum of $198,764.15. The parties have also agreed that the record in the appeal of *First National Bank of Birmingham, Trustee, E. T. Schuler Fund*, now pending before this Board at Docket Nos. 54372 and 63374, for decision upon the cost of the identical stocks, may be used as our basis for determining that issue in these proceedings. The material parts of that record are made a part of this record by reference.

The petitioner is a close family corporation, which, since its organization in 1908, has functioned principally as a holding company for investments made and property bought in its name by its business manager and president, E. T. Schuler. But few business meetings have been held since its organization. No formal dividends have been declared or corporate profits disbursed among its stockholders.

In the trial of *First National Bank, Trustee, supra*, the parties agreed that the stock in issue on March 1, 1913, had no market value

either in the United States or Canada. A witness for that petitioner, however, testified that on or about March 1, 1913, some 500 shares of it were sold on the London market at $40 per share. An attempt was made to establish a valuation basis for the stock by showing the underlying values of the original company's assets on March 1, 1913, but the evidence tendered was too remote in time and speculative in substance to be of value for that purpose, and no attempt was made to show the corporation's offsetting liabilities or the number of shares issued. In lieu of better evidence, we held in that case that the price paid in London, although somewhat remote and by no means ideal for the purpose, was evidence of what some buyer was willing to pay for the stock on the basic date in that market, and, therefore, must be accepted as the only price established by the evidence in any jurisdiction. Accordingly, we fixed the cost in that case at $40 per share. Consistent with that holding, we now find, for the purpose of this decision, that the stock of the Alabama Traction, Power & Light Co. had a cost to petitioner on March 1, 1913, of $40 per share. The parties being in accord that the cost of each share sold may be represented in the quotient of whatever sum we may find was the March 1, 1913, value of the original stock divided by 10, we now find that cost for determining petitioner's gain or loss to be $4 per share.

The petitioner alleges that the respondent erred in failing to allow the benefit of an overassessment for the year 1925 as a credit against the proposed deficiency for 1926, and in holding that the overassessment was barred by the statute of limitations. The overassessment contended for was determined by the Commissioner of Internal Revenue in his final audit of petitioner's income tax returns for 1925, and is shown in the deficiency letter dated May 8, 1930, proposing the 1926 deficiency from which the appeal is here taken.

The allowance of credits of the class here in controversy is governed by the provisions of section 284 (a) and (b)(1) of the Revenue Act of 1926,[1] which limits any such to three years from the

---

[1] SEC. 284. (a) Where there has been an overpayment of any income, war-profits, or excess-profits tax imposed by this Act, the Act entitled "An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes," approved August 5, 1909, the Act entitled "An Act to reduce tariff duties and to provide revenue for the Government, and for other purposes," approved October 3, 1913, the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, the Revenue Act of 1921, or the Revenue Act of 1924, or any such Act as amended, the amount of such overpayment shall, except as provided in subdivision (d), be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer.

(b) Except as provided in subdivisions (c), (d), (e), and (g) of this section—

(1) No such credit or refund shall be allowed or made after three years from the time the tax was paid in the case of a tax imposed by this Act, nor after four years from the time the tax was paid in the case of a tax imposed by any prior Act, unless before the expiration of such period a claim therefor is filed by the taxpayer * * *.

time the tax was paid, unless and except, in cases where the taxpayer has filed claims for refunds prior to the expiration of the three-year period.

This determination was made by the respondent on May 8, 1930, and there is no showing in the record that the petitioner kept alive its right to the credit it now seeks by the filing of a claim for refund within the statutory period provided for in the cited provisions. In the absence of such claim or claims, it is obvious that the respondent was without legal power to give the credit claimed at the time of his audit; and his action in not doing so must, therefore, be approved. *Shafpa Realty Corp.*, 8 B.T.A. 283; *F. Kieser & Son Co.*, 15 B.T.A. 359.

The petitioner contends that it should be entitled to a deduction from its gross income for 1927 of an " actual loss " amounting to $104,886.31, that being the alleged difference between the cost and sale price of certain properties known as the Atlas Fertilizing Co. property.

The only evidence bearing on this claim is found in the testimony of petitioner's president, E. T. Schuler, supplemented by a record book and several bundles of bank checks, which he put in the record in verification of his statements. The chronological history of the Atlas Fertilizer investment, according to Schuler, began in 1919 with the organization of the Peerless Chemical Co., of which he was an officer. Schuler stated that he invested approximately $252,840.08 of the petitioner's funds in the Peerless Co. That company failed, and in 1923 Schuler and H. A. Webster took over its assets in court proceedings which completely wound up its affairs. The purchase price which he and Webster paid into court for the assets of the Peerless Co. was a vendor's lien note, of the face value of $50,000, against that company, and $15,000 in cash. Later they were obliged to expend some eight or nine thousand dollars to purchase outstanding obligations of the Peerless Co., in virtue of which they acquired title to some four miles of railroad trackage valued at $106,000 when constructed. In 1925 the Atlas Co. was organized and these properties were turned in to it for 49,000 shares of its capital stock having a par value of $49,000. The Atlas Fertilizer Co. never functioned after 1925, and in 1927 the petitioner sold the stock it owned in that company for $45,000.

Although much time was devoted at the hearing by petitioner to show the amount of its original investment in the Peerless Co., in the view we take of the facts which must control our decision, that showing is of no importance to the case. The record shows, that the Peerless Co. was completely liquidated in 1923 and all of its assets sold; also, that the petitioner was allowed a loss amounting

to $134,765.22 by the Commissioner of Internal Revenue on such account, which loss was carried through as a net loss to and into 1925. At the court sale the petitioner, through Schuler and Webster, made an unqualified purchase of the Peerless Co.'s assets for the price of $65,000. No stock liabilities were assumed and there is no evidence to show that petitioner's original investment in any way figured in that purchase price or was considered in the transaction. In these circumstances there was no continuity of the petitioner's investment in the property sold and whatever it had at stake in the defunct company was lost to it when the sale of the Peerless Co.'s assets became final. *Olean Sand & Gravel Corp.*, 24 B.T.A. 324; *Joslyn Mfg. & Supply Co.*, 6 B.T.A. 749; *Petrel* v. *United States*, 34 Fed. (2d) 563; affd., 41 Fed. (2d) 517.

The petitioner sold the assets of the former Peerless Co. to the Atlas Fertilizer Co. for 49,000 shares of the latter company's stock; and it sold the Atlas Co. stock in 1927 for $45,000. The petitioner's loss, if any, is the difference between that selling price and the cost to it of the shares. That cost was in its aggregate some $24,000 in cash, and whatever fair market value we may find the vendor's lien notes for $50,000 had at the time of the purchase in 1923. The record is devoid of any proof tending to show what the cash or fair market value of the lien notes involved in the purchase of the assets of the Peerless Co. were on the date of that sale. In lieu of such proof we are unable to determine what that value was or to say that the respondent erred in his computation of the cost. We, therefore, must sustain the determination of the respondent upon this issue. *W. Oscar Williams*, 16 B.T.A. 109.

The only issue respecting the 1929 tax dispute upon which the petitioner introduced proof at the hearing was that involved in its claim of the right to deduct the sum of $4,500 from that year's gross income as a payment made to M. D. Payne for services rendered. The facts connected with this claim were stipulated and show that in that year petitioner was the principal stockholder of the Alabama Lime & Stone Corporation, which had suspended operations; that in order to protect its interest in that corporation it employed one M. D. Payne as a watchman and custodian of the company's properties and paid him for his services thus rendered by giving him one of that corporation's bonds, which cost petitioner the sum of $5,000 at the time of acquisition. The bond had a fair market value of $4,500 at the date it was paid to Payne. The petitioner claims this latter sum as a business expense, deductible from its gross income in 1929.

Respecting this claim, we think it is only necessary to say that it was a business charge of the Alabama Lime & Stone Corporation

and not an ordinary and necessary expense of the petitioner's business. (See sec. 23 (f) and (g), 1928 Act.) The petitioner was only a stockholder of the Alabama Lime & Stone Corporation. The duty of protecting a corporation's property belongs to it and not to the stockholders. The expenditure thus made must be regarded either as a loan to the Alabama Lime & Stone Corporation, or as a capital investment to be added to the cost of petitioner's stock in that company. *Harry E. Lutz*, 2 B.T.A. 484; *John G. Paxton*, 7 B.T.A. 92; *Warren E. Burns*, 11 B.T.A. 524; *B. Estes Vaughn*, 17 B.T.A. 620; *Snider B. Ward*, 18 B.T.A. 326; *W. F. Bavinger*, 22 B.T.A. 1239; *Burns* v. *Commissioner*, 31 Fed. (2d) 399; 280 U.S. 564.

Even if such payment could be properly attributed to the petitioner's regular business, we could not allow it upon the proof offered, for the reason that there is none in the record from which we may valuate the services rendered by Payne, or tell whether or not the payment made was reasonable compensation for them. *McMillan Metal Co.*, 2 B.T.A. 797; *General Water Heater Co.*, 14 B.T.A. 4; *Atlas Plaster & Fuel Co.*, 18 B.T.A. 1123; *Brown & Haley*, 21 B.T.A. 752; *Barto Co.*, 21 B.T.A. 1197; *Gray & Co.* v. *United States*, 35 Fed. (2d) 968.

The determinations of the respondent for the year 1929 are approved. The respondent, in his brief filed since the trial, has announced his abandonment of his claims for increased deficiencies for 1926 and 1927 except in so far as the facts stipulated may show an increase is warranted on account of additional profit from the sale of corporation stock, and as thus modified the respondent's prayer for affirmative relief will be allowed.

A goodly portion of the printed record in these proceedings is devoted to the petitioner's efforts to establish claims for losses and expenditures that have not been made the subject of any assignments of error and over which, therefore, we have no legal jurisdiction. Because of the importance given to them in the record and in petitioner's brief, we indicate those claims below, as designated by petitioner in its brief, as follows:

| | | | |
|---|---|---|---|
| Bo-We-Go | "Loss" | 1925— | $65,293.18 |
| Peerless Chemical Company | " | 1925— | 274,836.31 |
| Thornton Addition Lots | " | 1926— | 66,386.10 |
| Edgerton Salt Brick Company | " | 1926— | 13,277.22 |
| Anderson Brass Works | " | 1927— | 25,998.80 |
| Any expenditures | | 1926— | 2,322.40 |

Petitioner's failure to make issue on the above claims by reference to them in its petition, or in amendments to the pleadings at or subsequent to the trial, precludes our considering them in a decision of the tax issues here involved. They are, therefore, disregarded. *Dixie Mfg. Co.*, 1 B.T.A. 641; *W. P. Weaver*, 2 B.T.A. 709; *H. D.*

& *J. K. Crosswell, Inc.*, 6 B.T.A. 1315; *James B. Lowell*, 9 B.T.A. 62; *D. N. & E. Walter & Co.*, 10 B.T.A. 620; *David B. Roberts*, 19 B.T.A. 351; *Dawkins Lumber Co.* v. *Row*, 276 S.W. 493; *Duncan* v. *Gage*, 250 S.W. 647; *Boggs & Buhl* v. *Commissioner*, 34 Fed. (2d) 859.

*Decision will be entered under Rule 50.*