Aldo R. Balsam Trust, May E. Tanham, Trustee v. Commissioner.
Balsam Trust v. Commissioner
Docket No. 2479.
United States Tax Court
1944 Tax Ct. Memo LEXIS 45; 3 T.C.M. (CCH) 1204; T.C.M. (RIA) 44368; November 17, 1944
*45 Walter Roberts Bullock, C.P.A., 31 Nassau St., New York, N. Y., for the petitioner. J. Richard Riggles, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax for the year 1940, in the amount of $818.47. The only question involved is whether certain salaries and traveling expense paid by petitioner are deductible expenses under section 23 (a) of the Internal Revenue Code. Findings of Fact On May 5, 1931, a trust was created by Aldo R. Balsam, settlor. May E. Tanham (hereinafter referred to as trustee) has continued as trustee from the inception of the trust. Diogenes M. Balsam (father of the settlor) was the life beneficiary. On October 19, 1931, a second trust was created with the same parties. Both trusts were enlarged and modified from time to time and were merged on November 1, 1935. About April 12, 1937, the merged trusts, together with amendments and modifications, were codified. Diogenes M. Balsam was to receive the net income from the trust during his lifetime, except, if the settlor should predecease the life income beneficiary and if certain other conditions existed, or at the death of the life *46 income beneficiary, whichever happened first, other trusts and arrangements, not material herein, were provided for. Diogenes M. Balsam died September 29, 1940. During that year the trustee distributed $3,048.36 to him. The original corpora of the trusts consisted of pieces and parcels of real estate, together with buildings, improvements, and all outstanding leases thereon. The realty was largely adapted to chain stores and for the most part was rented to various chain stores. The trustee was to hold the property in fee; in trust, to receive the rents, issues, dividends, interest, and profits therefrom, and after paying costs, taxes, assessments, repairs, improvements, and any and all other expenses incident to the maintenance of the trust estate, to pay over the net income thereof in accordance with the terms of the trust. With the written consent of the settlor and the life beneficiary, or upon request of the settlor and the beneficiary, the trustee had power and authority to sell any property held in trust upon any terms and conditions that the trustee deemed proper. During the lifetime of the settlor the trustee was authorized to hold as an investment any property that she *47 might be directed to purchase by the settlor and beneficiary, or by the settlor alone upon the decease or incapacitation of the beneficiary. Prior to January 1, 1940, all real estate formerly held by the trust had been disposed of. Part of the realty had been sold to outside purchasers and the remainder had been transferred to the Pine Holding Corporation (Delaware), all of whose capital stock was owned by the trust. The assets of the trust estate as of January 1, 1940, and September 30, 1940, (at the death of the life beneficiary) were as follows: Jan. 1,
Sept. 30,
1940
1940
Associated Chain Store Realty Co.
6% Adjusted Certificates 9/57, Face Value $97,500.00
$ 17,258.33
Common Stock
Held 17,135 shares of old stock out of 150,980 shares
outstanding. These shares were exchanged during
1940 for 1,142 shares of new $4.00 par value com-
mon; 10,066 shares outstanding. Held 1,150 shares
as of September 30, 1940
14,721.00
$ 14,752.00
Eagle Stores Co., Inc., Charlotte, N. C.
Preferred Stock, 6% par value $100.00. Held 1,062 1/2
shares; outstanding, 2,849 shares
106,250.00
106,250.00
Common stock, par value $0.10. Held 9,500 shares;
outstanding 39,248 shares
5,825.00
5,825.00
Pine Holding Corporation (Delaware)
Capital Stock, par value $80.00. Held 450 shares; out-
standing 450 shares
1,149,840.27
1,149,840.27
W. W. Mac Co.
Preferred Stock, 6% par value $25.00. Held 100 shares.
2,500.00
2,500.00
Common Stock, no par value. Held 100 shares
25.00
25.00
Cash and Accounts Receivable
7,582.08
25,972.55
TOTALS
$1,304,001.68
$1,305,164.82
*48 The Pine Holding Corporation (hereinafter referred to as Pine), was engaged in the real estate business during 1940. Aldo R. Balsam, May E. Tanham, and Henry Blair Tyson were respectively, president, vice president and treasurer, and secretary of the Pine Holding Corporation. Pine's tax returns for the fiscal years ended June 30, 1939, and June 30, 1940, reported compensation payments to the above officers, as follows: Year
Balsam
Tyson
Tanham
1939
$ 8,000.04
1940
15,083.35
$3,500
$2,826.25 The 1940 return of the Pine Holding Corporation reported that each of the above officers was devoting "full time" to Pine's business. Pine Reporting Company of New York, a corporation, all of whose capital stock was owned by the Pine Holding Corporation, paid Aldo R. Balsam the sum of $4,166.60 during 1940 for services rendered. Eagle Stores Company, Inc., (hereinafter referred to as Eagle) maintained general offices at Charlotte, North Carolina. During 1940 Eagle operated between 22 and 25 chain stores in North and South Carolina and Virginia. Eagle owned no realty, but leased its store sites from others. One store property was leased from Pine Holding Corporation. In 1940 *49 the trust held 1062 1/2 shares of its par value $100, six per cent preferred stock of which 2,849 shares were outstanding, and 9,500 shares par value $.10 common stock of which 39,248 shares were outstanding. Eagle had an earned surplus as of December 31, 1940, of $17,259.83. Aldo R. Balsam and Henry Blair Tyson were respectively, chairman of the board of directors and a director of Eagle. Associated Chain Store Realty Company, Inc., (hereinafter called Associated) owned and leased to others about 17 pieces of chain store realty during 1940. As of September 30, 1940, the trust held 1,150 par value $4.00 shares of common stock. A total of 10,066 shares were outstanding. Balsam and Tyson were both members of its board of directors. During 1940 the trust paid Balsam, for services rendered, a salary of $416.67 per month for a period of nine months. The total payments to him amounted to $3,750.03. At the same time Tyson was paid $100 per week for a period of 39 weeks, the total of such payments amounting to $3,900. The period of their employment was between January 1 and September 30, 1940. The services rendered by Balsam and Tyson had to do with the selection, disposal and management *50 of real estate owned by Associated, and the selection and management of real estate held by Eagle under leaseholds. Traveling expenses in the amount of $181.87 were paid by the trust to Tyson to reimburse him for expenses incurred by him while inspecting certain properties in North Carolina which Eagle was interested in, and to reimburse him for expenses incurred while attending a meeting of the board of directors of Eagle. In making Fiduciary Income and Defense Tax return for 1940, petitioner deducted salary of $7,650.03 and traveling expenses of $181.87 from the income of the trust. The Commissioner determined a deficiency in income tax in the amount of $818.47 on the ground that the above expenditures were not deductible from petitioner's gross income. Opinion ARUNDELL, Judge: Petitioner was an investor in certain corporations. As of September 30, 1940, it owned, among other securities, approximately 25 per cent of the outstanding capital stock of Eagle Stores, Inc., and approximately 14 per cent of the outstanding shares of the Associated Chain Store Realty Company, Inc. In order to provide these corporations with the services of men having chain store real estate experience, *51 the petitioner employed Aldo R. Balsam and Henry Blair Tyson for that purpose. For services rendered between January 1 and September 30, 1940, petitioner paid Balsam and Tyson total salaries of $7,650.03. Each of these men devoted approximately 10 hours per week to the real estate problems of the corporations. In addition, petitioner paid traveling expenses incurred by Tyson while he was inspecting certain realty in North Carolina in which Eagle Stores, Inc., was interested and, on a different occasion, while attending a meeting of Eagle's board of directors. Petitioner claims that the expenditures under consideration are deductible as ordinary and necessary business expenses or ordinary and necessary non-business expenses under the provisions of section 23 (a) of the Internal Revenue Code. [1]
*52 Laying aside the question as to whether the expenditures meet the requirements of being "ordinary and necessary", we come to the problem of whether the petitioner was engaged in any trade or business within the meaning of the statute. The evidence is uncontroverted that during the taxable year 1940 the trust assets consisted only of securities, some accounts receivable, and a small amount of cash. Trust income for the period, totaling $13,950.83, consisted of dividends, interest, and a gain from the sale of securities. It is well settled that keeping records, collecting interest and dividends, and keeping funds invested through managerial attention does not constitute the carrying on of a trade or business within the meaning of section 23 (a)(1)(A). Higgins v. Commissioner, 312 U.S. 212; City Bank Farmers Trust Co. v. Commissioner, 112 Fed. (2d) 457; Miller v. Commissioner, 102 Fed. (2d) 476; White's Will v. Commissioner, 119 Fed. (2d) 619. Petitioner claims that the trust was never a passive investor in stock exchange type of securities and that it was *53 actively engaged in the internal affairs of Eagle Chain Stores, Inc., and Associated Chain Store Realty Co., Inc. It is argued that these expenses are of trade or business and not mere investment expenses. Certainly, it may not be said that these two corporations were the alter ego of petitioner. The trust was not a majority owner of the stock of either of the corporations and the time devoted to them amounted to but approximately 10 hours per week. Furthermore, the petitioner's activity extended only to the real estate affairs of the corporations and in the case of Eagle Chain Stores, Inc., it would appear that real estate was only an incidental problem in carrying out its merchandising activities. Petitioner's stock holding in the Associated Chain Store Realty Co., Inc., whose business was real estate, amounted only to a minor percentage of the outstanding shares. We are unable to find that petitioner was engaged in any trade or business as is necessary for deduction under section 23 (a)(1)(A). Petitioner is aware of the retroactive effect of section 121 of the Revenue Act of 1942 and it is its alternative contention that the expenditures are deductible thereunder. Subsection *54 23 (a)(2) embodies the provision of that amendment. To be deductible under this subsection expenses must be ordinary and necessary and paid or incurred during the taxable year for (1) the production or collection of income, or (2) the management, conservation or maintenance of property held for the production of income. The term "ordinary and necessary" as used in the statute means that expenses must bear a reasonable and proximate relation to either (1) or (2) above. See John W. Willmott, 2 T.C. 321, 327; and Senate Finance Committee Report No. 1631, 77th Cong., 2nd Sess., p. 88. By making available to the corporations the services and advice of men with experience in chain store realty the chances of success for the corporations may have been enhanced. But, the immediate benefit inured to the corporations. If the petitioner's expenditures related to the production or collection of income or to the management, conservation or maintenance of property held for the production of income, it was to the corporation's income or property and not to that of the trust. As a general rule for tax purposes, a corporation is an entity distinct from its stockholders. *55 Dalton v. Bowers, 287 U.S. 404. Though the corporation may prosper and flourish no taxable income is realized by the stockholders until the profits are distributed to them. The situation in the instant case is quite different from that presented in Mary Lily Bingham Trust, 2 T.C. 853, upon which petitioner relies. In that case the taxpayer was endeavoring to deduct, as ordinary and necessary non-trade or non-business expenses, certain expenses incurred as a result of litigation involving a tax deficiency against the estate, an expenditure connected with the payment of a legacy and some legal fees paid for services connected with the expiration of the trust and delivery of its assets to the legatees. We held that they were ordinary and necessary expenses paid for the conservation, management or maintenance of the property of the trust. There the expenditures had an immediate relation to the property of the taxpayer, and otherwise met the requirements for expense deductions. The statute contemplates the deduction of only such ordinary and necessary non-trade or non-business expenses as are personal to the taxpayer. Only *56 those expenses proximately and immediately relating to his own income or property are deductible. It does not embrace expenses of a separate and distinct taxpayer. Deputy v. DuPont, 308 U.S. 488; Word Specialty Mfg. Co., 34 B.T.A. 974, 982; Coosa Land Co., 29 B.T.A. 389. Furthermore, we are not convinced that it is an ordinary, common, or frequent practice for a stockholder to employ the president or directors of the corporation to render to the very corporation services connected with that company's assets. Nor, has the petitioner shown that such activity on her part was necessary. We do not know what the financial condition of Associated Chain Stores, Inc. was, but Eagle Chain Store Company paid dividends and had a surplus of some $17,000 in December 1940. There is no showing that either of the corporations could not or would not provide themselves with the services they needed. In our opinion the expenditures may not be characterized as ordinary and necessary expenses of the trust. It follows that the determination of the Commissioner that the expenditures are not deductible under *57 subsection 23 (a)(1)(A) or 23 (a)(2) is sustained. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * * * *
(2) Non-trade or non-business expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩