WORD SPECIALTY MANUFACTURING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

T. T. WORD SUPPLY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 68856, 68857. Promulgated August 25, 1936.

*G. Kibby Munson, Esq.*, and *Moultrie Hitt, Esq.*, for the petitioners.

*Willis R. Lansford, Esq.*, for the respondent.

OPINION.

DISNEY: The main issue turns upon whether or not the petitioners and the Texas corporation were members of an affiliated group of

corporations within the meaning of section 141 of the Revenue Act of 1928, subsection (d) of which reads as follows:

(d) *Definition of "affiliated group".*—As used in this section an "affiliated group" means one or more chains of corporations connected through stock ownership with a common parent corporation if—

(1) At least 95 per centum of the stock of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations; and

(2) The common parent corporation owns directly at least 95 per centum of the stock of at least one of the other corporations. As used in this subsection the term "stock" does not include nonvoting stock which is limited and preferred as to dividends.

The contention of the petitioners is that Word held in excess of 95 percent of the stock of the Texas and Manufacturing corporations as a trustee for the Supply Co. and, accordingly, the latter owned the statutory percentage of stock to entitle the three corporations to file consolidated returns for the taxable years. The position of the respondent is that Word had absolute title to the stock of the Texas and Manufacturing corporations outstanding in his name. The question thus becomes one of whether such stock was, in fact, owned by Word or the Supply Co. If it was owned by Word, the corporations were not affiliated and no right existed to file consolidated returns. Sec. 141 (a).

The respondent's finding is in accordance with representations consistently made by Word as president of the Supply Co. for a period of four years and the manner in which the stock was issued. We are asked to ignore such allegations and indications of real ownership and accept, as reflecting the true situation, testimony of Word and another witness of the petitioners that the intent was to have the Supply Co. acquire the stock; that Word took title to the securities merely on the advice of counsel that a Texas corporation may not legally own stock of another corporation; and that the books do not reflect the real facts. We have not been referred to any authority opposed to the right of a Texas corporation to acquire and own stock of another corporation.

It is argued that the allegations of ownership were made at a time when the question was unimportant, and for that reason they have little, if any, probative force. We think otherwise. They represent, in our opinion, a conclusion reached within a short time after completion of the transactions by one chiefly concerned with the result, and adhered to without change of position for a long period of time. It would require strong evidence to overcome the facts so consistently represented by the person primarily concerned with the outcome of these proceedings. See *Evan V. Quinn*, 26 B. T. A. 970.

The contract of March 10, 1926, involved only the purchase of claims against the Texas corporation and the North Texas Supply Co., and stock of the latter corporation, but the consideration was regarded as part of the cost of the stock of the Texas corporation, apparently under the assumption that the contract and the subsequent acquisition of the stock were one transaction. That Word was fully aware of the fact that he had been charged with the sum of $160,000 as part of the purchase price of the stock of the Texas corporation is shown by clear proof that he claimed interest on so much thereof as was borrowed by the Supply Co. as a deduction in his individual income tax returns, including his 1932 return, filed after he caused these proceedings to be instituted. No part of such interest was claimed as a deduction by the corporation.

The stock was purchased directly from the Tennessee corporation. Whether the transaction was made the subject of a written agreement does not appear. Word testified that the "Tennessee Company gave us the stock of the company in return for some patterns and raw material that we had on hand at Houston." The material testified to seems to have been property of the Texas corporation which the Supply Co. had under consignment. A consulting accountant was requested to advise the Supply Co. the entries to make to reflect the acquisition of the stock and the terms of the March 10, 1926, contract. In a letter addressed to Word, as president of the Supply Co., the accountant stated that "I understand that to acquire the capital stock of the Lucey Manufacturing Corporation of Texas you paid the nominal sum of one dollar and agreed to have the Corporation ship the Tennessee plant, of the New York Corporation, approximately $38,000 worth of raw material." On cross-examination Word testified that the communication set forth the correct facts. It was pursuant to the instructions set forth in the letter that Word was charged with the value of the material. Thereafter the amount was carried on the books of the Texas corporation as a debt due from Word.

As to the ownership of the stock of the Manufacturing Corporation outstanding in the name of Word, the only evidence before us in any way indicating that the Supply Co. was the real owner, is a showing that the Supply Co. furnished the corporation's capital. Such meager evidence proves nothing substantial, in the light of declarations of Word until these appeals were taken that he was the owner of the securities.

The finding of the respondent that the petitioners and the Texas corporation were not affiliated is prima facie correct and is presumed to rest upon a correct determination of the facts. The evidence before us supports, rather than overcomes the determination of the respondent. Accordingly, we find that the respondent did not

err in refusing to compute the tax liability of the petitioners and the Texas corporation on the basis of consolidated returns.

Under the alternative issue the Supply Co. seeks the benefit of operating expenses of the Texas corporation as deductions from its gross income. It refers to the resolutions of the respective corporations as making such expenses chargeable to it. No statutory or other authority is cited to support the claimed right, and we find none.

Operating expenses of the Texas corporation in and after 1926 were allocated between it and the Supply Co. in accordance with a plan proposed by the consulting accountant of the Texas corporation in January 1927, and as so apportioned were claimed as deductions by the respective corporations in the consolidated returns filed for the taxable years. The deductions so claimed were allowed by the respondent in his determination of the deficiencies. From this course of action it would seem that the terms of the resolutions were never carried into effect, even though they were adopted prior to the time allocation instructions were issued by the accountant consulted for that purpose. No reason is assigned for failing to apportion the expenses in accordance with the resolutions.

The expenses in controversy were incurred in the first instance by the Texas corporation and, in the absence of any evidence to the contrary, we assume that it paid, and if not, accrued, the liabilities on its books. It does not appear that the Supply Co., aside from the allocations referred to, was ever charged with or reimbursed the Texas corporation for any of the operating costs. Thus there is no proof that the Supply Co. ever paid or accrued the expenses on its books during or since the taxable year. Neither is any assurance given us that the Supply Co. proposes to recognize the obligation at this late date.

If there were proof in the record of the payment or accrual of the expenses as liabilities of the Supply Co., we would be compelled to disallow the claim.

Deductions from gross income are a matter of legislative grace. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, and may not be allowed unless plainly authorized. *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686. Authority for the deduction from gross income of items such as are involved in this issue are contained in section 23 of the Revenue Act of 1928. Business expenses are limited to "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses * * *; and rentals * * *." Subsection (a). Interest paid or accrued

within the taxable year on indebtedness may be deducted. Subsection (b). The same section authorizes the deduction of "Taxes paid or accrued within the taxable year" and a reasonable allowance for exhaustion of property used in the trade or business. Subsections (c) and (k).

The Supply Co. voluntarily and without consideration agreed to assume the operating costs of the Texas corporation. The statute contemplates the deduction of only such ordinary and necessary business expenses as are personal to the taxpayer. It does not embrace such operating costs of a separate and distinct taxpayer. *Sigmund Spitzer*, 23 B. T. A. 776. To the same effect are *Caldwell & Co.*, 26 B. T. A. 790; and *Coosa Land Co.*, 29 B. T. A. 389. A husband who pays taxes on property in his wife's name may not deduct the amount thereof in his individual return even though he assumed the obligation at the time of his gift of the property to his wife. *Eugene W. Small*, 27 B. T. A. 1219; *William Ainslie Colston*, 21 B. T. A. 396; affd., 59 Fed. (2d) 867; certiorari denied, 287 U. S. 640.

The Supply Co. also contends under its alternative issue that the operating expenses of the Texas corporation should be allocated to it under the provisions of section 45 of the Revenue Act of 1928, reading as follows:

In any case of two or more trades or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such trades or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such trades or businesses.

As already pointed out all of some, and a portion of other, operating expenses of the Texas corporation were allocated to the Supply Co. each year in and after 1926, on the basis of advice given by a consulting accountant. The allocations so made were reflected in the consolidated returns filed by the corporations for the taxable years and accepted by the respondent in fixing the income tax liability of the Supply Co. and the Texas corporation. We are asked to go a step further under the statute and apportion all of the deductions of the Texas corporation, except a small amount for rent, bad debts, and net losses for previous years, to the Supply Co.

A taxpayer claiming the benefits of the statute must prove the necessity for the consolidation and a reasonable, accurate method of allocation. *Nowland Realty Co.* v. *Commissioner*, 47 Fed. (2d) 1018, affirming 18 B. T. A. 405; *Roessler & Hasslacher Chemical Co.*, 25 B. T. A. 915; *Flambeau Public Service Co.*, 27 B. T. A. 299; *Drawoh, Inc.*, 28 B. T. A. 666.

The Supply Co. says that the activities of the Texas corporation decreased each year, making it necessary, in order to clearly reflect the income of the corporations, to apportion a greater part of the expenses of the Texas corporation to the Supply Co. in succeeding years. The respective corporations represented to the respondent that the apportionments made were sufficient to clearly reflect their income, and a mere showing of decreased business income is not sufficient for us to hold to the contrary.

The Texas corporation had gross income each year from sales of material, interest, and other activities, which was reported as "Other Income", and a net loss without the benefit of the amounts in controversy as a deduction. If we allocated its operating expenses to the Supply Co., the accounts of the Texas corporation would show no expense to offset the earning of such income. Such a distribution, under the circumstances, would distort, rather than clearly reflect, the income of the respective corporations.

No evidence was offered to show that there was a commingling of accounts of the respective corporations and, in the absence of such proof, we may assume that the income and expenses of the respective corporations are accurately recorded in books of account separately kept by each. From such books the taxable income of each corporation can be clearly determined. Where such a condition exists there is no need to consolidate accounts to clearly reflect income. *Drawoh, Inc., supra.*

From the record made, we hold that the Supply Co. is not entitled to a greater apportionment of the expenses of the Texas corporation than that claimed by the respective parties and allowed by the respondent.

*Decision will be entered for the respondent.*