**JOHN L. DENNING & COMPANY, Inc. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 3927.

United States Court of Appeals Tenth Circuit.

Feb. 8, 1950.

John F. Eberhardt, Wichita, Kan. (George Siefkin, George B. Powers, Samuel E. Bartlett, Carl T. Smith, Stuart R. Carter, Thomas E. Woods, Robert C. Foulston, Jr., Wichita, Kan. on the brief) for petitioner.

Ellis N. Slack, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst, Atty. Gen. and Edward J. P. Zimmerman, Sp. Asst. to the Atty. Gen., on the brief) for respondent.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

PHILLIPS, Chief Judge.

This is a petition to review a decision of the Tax Court. It involves deficiencies in income, declared value excess profits, and excess profits taxes for the years ending February 29, 1944, and February 28,

1945, asserted against John L. Denning & Co., Inc., a Louisiana corporation.[1]

There is no substantial dispute in the material facts.

During the tax years here involved and for many years prior thereto, the corporation was engaged in the business of buying and selling broom corn and broom corn supplies such as broom handles, twine, and other like articles. The buying and selling of broom corn constituted its principal business. It owned and operated a public broom corn storage warehouse.

Since the organization of the corporation, John L. Denning has been its president. He has had 36 years experience in the broom corn business. On October 1, 1943, John L. Denning owned 753 shares, his wife, Effie Denning, 16 shares, his son, John L. Denning, Jr., 196 shares, and his daughter, Edwana Denning Collins, three shares of the 968 shares of the corporation's stock. 331 shares were owned by 20 other individuals.

On October 1, 1943, a partnership was formed between Effie Denning, Edwana Denning Collins, and John L. Denning, Jr., for the purpose of buying, selling, trading, and dealing in broom corn and similar products, under the partnership name of Denning Broom Corn Company.[2] The partners entered into a formal written contract which provided that each partner should contribute one-third of the partnership capital of $25,000 and should share profits and losses equally. Effie Denning was designated as manager with full authority to employ other persons to assist in the management and conducting of the business. Each partner paid in his one-third of the capital.

Effie Denning was thoroughly experienced in the broom corn business, having actually engaged, since 1929, in every stage thereof, including the purchase of broom corn in the fields. Having accumulated considerable money of her own during her years of work, Effie Denning, prior to October, 1943, discussed with John L. Denning the possibility of forming a partnership whereby she could put her money to work. John L. Denning wanted her to enter some line of business other than broom corn and suggested ladies' ready to wear, but Effie Denning, because of her familiarity with the broom corn business, determined to form a partnership to engage in that business. The partnership was her idea, not John L. Denning's. She discussed the matter with Edwana Denning Collins who expressed a desire to join in the venture. John L. Denning agreed to the partnership for John L. Denning, Jr., acting as his attorney in fact, John L. Denning, Jr., then being in the Army. The partnership was entered into in October, 1943, at a time when broom corn was scarce and the market demand exceeded the supply, resulting in a favorable market.

The primary purpose of forming the partnership was to permit the partners to invest money in the broom corn business, although a secondary purpose was to accomplish split sales of broom corn by the corporation and the partnership and thereby receive a higher selling price, which John L. Denning thought could be lawfully accomplished under Office of Price Administration regulations fixing ceiling prices for broom corn. But the split sales were a minor part of the business of the partnership. During the fiscal years in question, the gross sales of broom corn by the partnership totalled $1,240,404.04, while the split sales, 24 in number were for an aggregate of $127,609.82, of which the corporation and the partnership each received one-half.

John L. Denning contributed no funds to the partnership and was not entitled to share in its profits. John L. Denning owned 57.96 per cent of the shares of the corporation. Persons other than the Denning family owned 25.48 per cent of the shares of the corporation. Thus, it will be seen that 83.44 per cent of the shares of the corporation were owned by persons who had no interest in the partnership and no right to participate in the earnings thereof and that the persons owning the partnership interests owned only 16.55 per cent

1. Hereinafter called the corporation.

2. Hereinafter called the partnership.

of the shares of the corporation. Except for such 16.55 per cent interest, there was no common ownership in the partnership and the corporation.

The partnership borrowed extensively from independent banks upon its own credit and in its own name. Its loans from banks ranged from $3,500 to as high as $210,900. Its credit was established upon the basis of an audit of its books prepared by its accountant and delivered by him to the lending banks. The partnership at no time borrowed either on the credit of John L. Denning or of the corporation.

In January, 1945, the partnership purchased its own broom corn warehouse. Prior to that date, it stored some of its broom corn in the corporation's warehouse but the partnership was always charged, and it paid, the standard storage price which was charged to strangers.

The partnership and corporation occupied the same office building and a portion of the partnership's employees were also employed by the corporation, but there was an allocation of general overhead expenses and rental for the space occupied by the partnership and there was also an allocation of the wages of the common employees by the corporation and the partnership, and in such allocations, no favoritism was shown the partnership.

In 1945 there were approximately 300 broom corn purchasers in the entire United States. They owed no allegiance to any particular broom corn dealer and purchased indiscriminately on the basis of price and quality. While commission agents in the field purchased for both the corporation and the partnership, the partnership paid with its own funds for all broom corn purchased for it, including commissions to the agent. Moreover, considerable broom corn was purchased through telephone calls by Ed L. Collins, who handled

the solicitation work for the partnership and performed no work for the corporation.

No doubt, John L. Denning exercised a domination over both the corporation and the partnership, but his domination of the partnership was because of the family relation and not because of the ownership of any interest therein.

■ We think there could be no doubt on the undisputed facts in the record that the partnership served an independent business purpose. It was owned, its capital was subscribed, and its credit was provided by three minority stockholders in the corporation. It purchased and sold broom corn. It owned its own warehouse. In so far as it used office space, facilities and employees of the corporation, and warehouse storage, it paid full value therefor and was not favored. The corporation and the partnership kept separate books and records and the books and records of the partnership clearly reflected the business transacted by it and the income earned by it. It was organized primarily for the purpose of enabling Mrs. Effie Denning to employ her own capital and utilize her knowledge in the broom corn business at a particularly advantageous time in that business. It served a legitimate business purpose. It was not a sham. Under the undisputed facts on this record we do not think the separate entity of the corporation and the partnership may be disregarded.[3]

What we said in Denning & Co. v. Fleming, 10 Cir., 160 F.2d 697, is not controlling here. We there held that with respect to the 24 split sales for the purpose of determining applicable ceiling prices, the partnership was the alter ego of the corporation, but those sales were only a very small part of the business transacted by the partnership. The remaining business transacted by the partnership was wholly separate and distinct from the business of the corporation.

3. Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 439–440, 63 S.Ct. 1132, 87 L.Ed. 1499; Miles-Conley Co., Inc. v. Commissioner, 10 T.C. 754, 760; National Carbide Corp. v. Commissioner, 336 U.S. 422, 429, 69 S.Ct. 726; Paymer v. Commissioner, 2 Cir., 150 F.2d 334, 336; Ross v. Commissioner, 5 Cir., 129 F.2d 310, 313; Barq's Bottling Co., P.H.1946, T.C.Memo.Dec. Par. 46,150; A. G. Nelson Paper Co., P.H.1944, T.C.Memo.Dec. Par. 44,286; Nichols & Co. v. Secretary of Agriculture, 1 Cir., 131 F.2d 651, 655–657.

■ Moreover, we do not think the Commissioner could lawfully apply § 45 of the Internal Revenue Code, 26 U.S.C.A. § 45, in the instant case. The holder of the majority of the stock in the corporation owned no interest in the partnership. The partners owned only a minority interest in the corporation. The earnings of the two entities were entirely separate and distinct. The earnings of the partnership arose from the capital, the credit, and the efforts of the partners. The income of the partnership belonged to the partners. Its income was clearly reflected by its records. There was no confusion of the income of the two entities which required any adjustment between them.[4]

The cause is remanded with instructions to modify the decision of the tax court in accordance with the views herein expressed.

See also 2 Cir., 170 F.2d 914.

4. Buffalo Meter Co. v. Commissioner, 10 T.C. 83, 88; Seminole Flavor Co. v. Commissioner, 4 T.C. 1215, 1229–1235; Koppers Co. v. Commissioner, 2 T.C. 152, 155; Briggs-Killian Co. v. Commissioner, 40 B.T.A. 895, 899, 900; Word Specialty Mfg. Corp. v. Commissioner, 34 B.T.A. 974, 983.