**The FRIEDLANDER CORPORATION, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 14903.**

United States Court of Appeals, Fifth Circuit.

Nov. 16, 1954.

Waldo DeLoache and Gibson & DeLoache, Moultrie, Ga., for Friedlander Corp., Petitioner.

James Q. Riordan, Sp. Asst. Atty. Gen., Ellis N. Slack, David O. Walter, Lee A. Jackson and H. Brian Holland, Asst. Attys. Gen., Daniel A. Taylor, Chief Counsel, Internal Revenue Service, William D. Crampton, Sp. Atty., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal from a tax court decision[1] by a divided court, determining an aggregate net deficiency of $309,195.-42, in declared value excess profits taxes and excess profits taxes, for periods ending December 31, 1942, 1943, 1944 and

---

1. 19 T.C. 1197.

1945, presents two questions for decision.

The first and principal one is whether the tax court erred in holding that the income of the partnership Friedlander and Sons was attributable for tax purposes not to the partnership but to the petitioner for each of the years in question under Section 22(a) of the Internal Revenue Code.

The second and minor one is whether the tax court erred in sustaining the commissioner's disallowance of a portion of the salaries paid by petitioner in each of the years in question to Irwin and Max Friedlander.

Appealing from the tax court's decision, the petitioner is here urging upon us that the decision is erroneous in that turning as it' does entirely upon the conclusion of the tax court that "the primary motive for forming the partnership was to reduce tax liability", it runs counter to settled law as established by the tax court itself[2] and by the cases,[3] that:

" * * * a taxpayer is free to choose the type of organization or form in which he will cast his business activities to achieve a desired business or tax result. He is not required to adopt or continue with that form of organization which results in the maximum tax upon business income. Meldrum & Fewsmith, Inc., 20 T.C. 790, Moline Properties, Inc. v. Commissioner, 319 U.S. 436 [63 S.Ct. 1132, 87 L.Ed. 1499]. Furthermore, if a taxpayer actually carries on business in the form chosen, the tax collector may not deprive him of the incidental tax benefits flowing therefrom, unless it first be found to be a fiction or a sham. · * * * " Polak's Frutal Works, Inc., 21 T.C. 973.

■ For the reasons hereafter briefly stated, we agreed with petitioner that this is so. The statement of the evidence on which the case was tried to the tax court and on which the appeal is presented here consists of 131 pages of oral and written stipulations and testimony and the findings of fact take up 20 pages of the record. The essential, the controlling, facts,[4] however, on which the

---

2. Such as Fair Price Stations, Inc., T.C. Memo Opinion, Docket 6102 (5–23–46); John Junker Spencer, 19 T.C. 727; Chelsea Products Inc., 16 T.C. 840; Polak's Frutal Works, Inc., 21 T.C. 953.

3. Such as Chisholm v. Commissioner, 2 Cir., 79 F.2d 14, 101 A.L.R. 200; L. W. Tilden Inc. v. Commissioner, 5 Cir., 192 F.2d 704; Commissioner of Internal Revenue v. National Carbide Corp., 2 Cir., 167 F.2d 304, 306; Twin Oaks Co. v. Commissioner, 9 Cir., 183 F.2d 385, 24 A.L.R.2d 466.

4. In 1929 taxpayer was incorporated and began operating a department store in Moultrie, Georgia. In time the department store prospered and the taxpayer added other stores to its holdings. In 1943 taxpayer owned and operated ten retail mercantile establishments located in five Georgia, and two Alabama, communities. The department store continued to be the principal place of business and by that time was engaged to a limited degree in selling at wholesale.

Adjacent to the department store was a hardware store which was operated somewhat as a unit of the larger store. Two other stores, owned by taxpayer were located in Moultrie.

Louis Friedlander was the founder of taxpayer, and he, his brother-in-law, Perlman, and his six sons owned nearly all of its stock. The Friedlander brothers acquired their stock as a gift from Louis which was subsequently increased by a stock dividend. In 1943 each of the boys owned 175 shares having a par value of $100 per share. While the book value of this stock was more than its par value, because of the close family ownership, its value on the open market was questionable.

The partnership, Louis Friedlander & Sons, composed of Louis, Perlman, their respective wives and three of the Friedlander brothers, Irwin, Malvin, and Max, was formed in 1943 because of the tax advantages of doing business as a partnership rather than as a corporation. As of July 1, 1943, it purchased all of taxpayer's stores, except the department store and the hardware store at Moultrie, for a total consideration of approximately $111,500. No real estate was included

answer to the first question turns are in very brief compass, and there is no dispute as to any of them.

As to the purported findings of fact of the tax court, therefore, the case stands here as it stood in Commissioner of Internal Revenue v. National Carbide Corp., 2 Cir., 167 F.2d 304, 307, affirmed 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 799, where the court said:

> "The facts are not in dispute, for the argument is plainly untenable that the Tax Court's declaration that the income from the three businesses 'was the income and property of Airco as principal' was a finding of fact; on the contrary, that was exactly the issue on which the case turned."

This is so because, while the finding there was in the form of a determination as to whose was the income and property and the finding here upon the undisputed facts was that the partnership of Louis Friedlander and Sons was a sham and because it was the income earned by it and distributed to its members was not really its and their income but the income of the petitioner's corporation, the finding here is to the same extent, in the same way, and for the same reason not a finding of fact but a determination of the issue on which the whole case turned, "whose under the undisputed facts, was the income in question here?". For here the majority, rejecting the stipulated and undisputed facts that the partnership was formally created and activated, and for years carried on a large business, and seizing, as determinative of the question at issue, upon the admitted fact that the partnership was formed because of the advice of a tax accountant and consultant that there would be less liability if the stores were owned by a partnership, and stating: "The primary motive for forming the partnership was to reduce tax liability", concluded in the teeth of the overwhelming, indeed undisputed, oral and physical evidence to the contrary, that "The parties did not in good faith and acting with a business purpose intend to join together as partners in the present conduct of an enterprise". So concluding, and without a syllable of evidence or a real fact to the contrary, it erroneously declared and held that the large income in fact earned by the partnership and its members throughout the years was not earned by it but by the petitioner and was, therefore, taxable not to the partnership but to it.

Saying, and thus giving lip service to the settled rule of law, "that a taxpayer may select any form of organization through which to conduct business and is under no compulsion to adopt a type that will yield the greatest amount of tax revenue", and again, "Louis, the architect of the plan, testified, in effect, that taxation was the predominant motive for creation of the partnership. Such a purpose, if the plan for its accomplishment is not unreal or a sham, is of course not fatal. * * *", the majority proceeded by the same kind of unpermissible fiating which has been condemned in the cases, to attribute to petitioner income earned not by it but by the partnership.

Thus, though it is perfectly clear under the undisputed facts that this case is not a family partnership case, indeed the commissioner in his brief "agrees with taxpayer that this is not a typical family partnership case", the organ of the majority by drawing across the trail of the undisputed facts the red herring that Louis Friedlander and Sons, to

---

in this sale. The merchandise inventories were purchased at cost and the fixtures either at book value or, where there was no book value, at an agreed price. The partnership operated the stores until April, 1946, doing a large business each year, when it was succeeded by a newly organized corporation to which all its properties and assets were transferred, the partners as stockholders retaining their pro rata interests.

whom the properties were transferred, is a family partnership, has obscured it for himself and for some, but not all, of his colleagues.

To see clearly that this is so, it is only necessary to read the opinion[5] in which, with an incisive clarity, precision, and brevity, the dissenting judges at once expose the fallacy of the majority opinion in paramounting and turning this case upon the fact that Louis Friedlander and Sons was a family partnership and establish the fundamental error of the decision.

■ With the first question, "Whose were the earnings?" thus answered in the petitioner's favor, we turn to the second question, in effect can the court say from a consideration of the record as a whole that the findings of the tax court sustaining the commissioner's salary disallowances are clearly erroneous, to answer it briefly by saying that we do not think we can.

The judgment of the tax court is affirmed in part, reversed in part and the cause is remanded to the tax court with directions to redetermine deficiencies accordingly herewith.

5. "Kern, J., dissenting: Two things should be stressed in a consideration of this case: (1) it does not present the usual 'family partnership' question, and (2) it does not involve the application of Section 45 of the Internal Revenue Code, under which the Commissioner might allocate income or deductions between the corporation and the partnership in order to clearly reflect the income of both, but involves the application of Sec. 22(a). In order to reach the result reached by the majority herein it is necessary to conclude that there was, in reality, no partnership in existence during the taxable years, regardless of who the partners were. For example, it would not be enough to conclude that the Friedlander sons were not bona fide partners; it would be necessary to conclude that there were not any bona fide partners, and that even a partnership composed of Louis Friedlander and Perlman was a sham and without reality.

"My interpretation of the facts is that a partnership was formed by some of the petitioner's stockholders, that petitioner transferred certain of its assets to the partnership, that the partnership paid pe-

titioner for these assets, that the partnership used these assets in the conduct of the business for which it was formed, that the partnership actively carried on a business during the taxable years, that the income from this business was distributed to the partners, that petitioner corporation did not earn or receive this income, and that the assets of the partnership eventually went into the hands of another corporation, none of the stock of which was owned by petitioner. * * *

"The reality of a business organization is not to be tested by the motive leading to its formation, but by the purpose which it accomplishes and performs. See Estate of Lewis, 10 T.C. 1080, 1088, aff[irme]d [Lewis v. Commissioner, 1 Cir.,] 176 F.2d 646. In the instant case, where the partnership took over a business and operated it for several years, it would appear to me to have been formed for a business purpose even though the motive of the individuals leading to its formation was to minimize taxes. * * * *"

"Arundell and Black, JJ., agree with this dissent."